UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BRICKLAYERS INSURANCE AND
WELFARE FUND, BRICKLAYERS PENSION
FUND, BRICKLAYERS SUPPLEMENTAL
ANNUITY FUND, BRICKLAYERS AND
TROWEL TRADES INTERNATIONAL
PENSION FUND, NEW YORK CITY AND
LONG ISLAND JOINT APPRENTICESHIP
AND TRAINING FUND, INTERNATIONAL
MASONRY INSTITUTE, and SANTO
LANZAFAME, in his fiduciary capacity as
Administrator, BRICKLAYERS LOCAL 1,
INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED CRAFT
WORKERS, and BRICKLAYERS LABOR
MANAGEMENT RELATIONS COMMITTEE,

                Plaintiffs,

    -against-

GOLDEN VALE CONSTRUCTION, INC. as the
successor to and/or alter ego of OILEAN
CONSTRUCTION, INC. and JOHN
DRISLANE,

                Defendants.
------------------------------------------------------------X

REPORT and
RECOMMENDATION
CV-06-1028 (NG)

GOLD, S., U.S.M.J.:

## Introduction

Plaintiffs bring this action pursuant to Sections 502 and 515 of the Employer Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132 and 1145, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Bricklayers Insurance and Welfare Fund, Bricklayers Pension Fund, Bricklayers Supplemental Annuity Fund, Bricklayers and Trowel Trades International Pension Fund, New York City and Long Island Joint Apprenticeship and Training Fund, and International Masonry Institute (collectively, the

"Funds") claim that defendants failed to make contributions owed under ERISA for the period of April 1, 2004 through December 31, 2005. Am. Compl. ¶¶ 1-2, 9 *et seq.* Additionally, Bricklayers Local 1, International Union of Bricklayers and Allied Craft Workers ("Local 1") and Bricklayers Labor Management Relations Committee ("LMRC") claim unpaid union dues and contributions owed by defendants under LMRA. *Id*. ¶¶ 13-14. Plaintiffs also seek to recover interest, liquidated damages, and attorney's fees and costs pursuant to ERISA.[1]

Upon plaintiffs' application and in light of the defendants' failure to appear or otherwise defend this action, the Clerk of the Court noted the defendants' default. Docket Entry 13. The Honorable Nina Gershon then referred this case to me to report and recommend on the amount of damages and other relief, if any, to be awarded. Docket Entry 14.

## Discussion

*A.     Liability*

Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S. Ct. 1049 (1993); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). A court, however, retains the discretion to determine whether entry of a final default judgment is appropriate. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Even after a defendant has defaulted, "[a] plaintiff must . . . establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." *U.S. v. Ponte*, 246 F. Supp. 2d 74, 76 (D.

---

[1] In their amended complaint, plaintiffs sought an order requiring defendants to submit to an audit. Am. Compl. ¶¶ 16-17. It appears that plaintiffs no longer seek this relief. *See* Wasserman Aff., Docket Entry 10; Pls. Letter, Docket Entry 18.

Me. 2003) (citation omitted). *See also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action).

Plaintiffs have established the elements of liability required to state a claim pursuant to 29 U.S.C. § 1145. Section 1145 provides as follows:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

In their complaint, plaintiffs allege that defendants failed to make required contributions for the period from April 1, 2004 through December 31, 2005. Am. Compl. ¶ 9. Two separate collective bargaining agreements ("CBA" or "CBAs") were in effect during this time. In December, 2002, Local 1 entered into a CBA with Oilean Construction, Inc. ("Oilean"), covering the period from July 1, 2002 to June 30, 2005. Pls. Letter Ex. 3.[2] On October 12, 2004, Local 1 entered into the same CBA with Golden Vale. *Id*. Ex. 4. Defendant John Drislane signed Exhibit 3 as president of Oilean and Exhibit 4 as president of Golden Vale. *Id*. Exs. 3, 4. Plaintiffs have not submitted any additional bargaining agreements expressly covering the period from July 1, 2005 through December 31, 2005.

In considering whether the allegations of plaintiffs' complaint meet the statutory requirements for ERISA liability, the facts described above raise two issues: 1) whether Drislane may properly be held individually liable under ERISA, which provides for liability against an

---

[2]"Pls. Letter" refers to plaintiffs' letter dated October 18, 2006, Docket Entry 18.

"employer," and 2) whether a valid collectively bargained agreement was in force during the entire time for which plaintiffs claim contributions are due.

   1.   *Individual Liability of John Drislane*

Plaintiffs seek to impose personal liability on John Drislane for the unpaid contributions owed by the corporate defendants. Pls. Letter pp. 2-3. Ordinarily, a corporate officer is not personally liable for the ERISA obligations of the corporation absent unusual circumstances, such as fraud or facts warranting piercing the corporate veil. *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 35 (2d Cir. 1994); *Sasso v. Cervoni*, 985 F.2d 49, 50-51 (2d Cir. 1993). Even where, as here, the signature page of a collective bargaining agreement contains text specifically providing for personal liability, a corporate officer will not be held individually liable absent "clear and explicit evidence" of the parties' intent that he be personally bound. *See Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.*, 301 F.3d 50, 52-54 (2d Cir. 2002) (noting that "New York law requires that there be 'clear and explicit' evidence of the defendant's intent to add personal liability to the liability of the entity," and that "the high degree of intention . . . goes beyond the mere presence of a personal liability clause in the signed agreement"). Thus, the court in *Thomsen* refused to impose personal liability despite language in the CBA stating that "[t]he person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the Employer provided in this Agreement." *Thomsen*, 301 F.3d at 52.

The Second Circuit has specified the factors relevant to determining whether individual liability should be imposed as follows:

> [t]he factors to be examined in assessing the signatory's intention

> [to be personally bound] include the length of the contract, the
> location of the liability provision(s) in relation to the signature line,
> the presence of the signatory's name in the agreement itself, the
> nature of the negotiations leading to the contract, and the
> signatory's role in the corporation.

*Lollo*, 35 F.3d at 35. In *Thomsen*, the court added that, although two signatures are not required, "the appearance of only one signature, especially when that signature is in [the individual's] official capacity," supports a finding that the signer did not intend to be personally bound.

Applying these factors to the allegations in this case yields little basis for imposing individual liability on Drislane. Factors weighing against finding Drislane personally liable include the length of the contract (29 pages) and the absence of Drislane's name anywhere in the body of the agreement. *See* Pls. Letter Ex. 3. In addition, Drislane signed the signature pages of the Oilean and Golden Vale CBAs only once, and over a line with the pre-printed word "Title," where the handwritten word "Pres" also appears. Although the forms Drislane signed called for his home address, that portion of the forms was left blank, and the telephone numbers provided for the corporations and for Drislane individually are the same. *Id*. Ex. 4. The only factor weighing in favor of finding Drislane liable is that the liability provision appears as a separate article of the CBA, directly above the signature line. *Id*. Plaintiffs have not presented any evidence concerning the negotiations leading to the contract or the extent of Drislane's authority to direct Oilean's and Golden Vale's affairs other than the fact that he was president of both corporations.

In support of their argument for personal liability, plaintiffs have submitted evidence of prior settlement agreements in which Drislane explicitly assumed personal liability for the debts of the defendant corporations. *See* Pls. Letter Exs. 5-7. Contrary to plaintiffs' argument,

however, these settlement agreements – to the extent they are relevant at all – suggest that Drislane did *not* intend to assume individual liability when he signed the CBAs. Unlike the Oilean and Golden Vale CBAs, the settlement agreements repeatedly refer to "Oilean Construction Corp. *and John Drislane*" and use the phrase "*we* promise to pay." *Id*. (emphasis added). In addition, each of the settlement agreements requires Drislane to execute an individual confession of judgment. Moreover, the settlement agreements are only two to four pages in length, as opposed to the far lengthier CBA. Finally, although he signed the CBAs only once, Drislane signed the 2004 settlement agreement twice – once on behalf of Oilean and once on behalf of himself. *Id*. Ex. 7. *See also Thomsen*, 301 F.3d at 54 (recognizing that, when an individual is to be held personally responsible, "the nearly universal practice" is for that individual to sign twice: once as an officer and once as an individual). Drislane's intent to assume personal liability is, therefore, far more clearly and explicitly expressed in these agreements than in the CBAs, and the settlement agreements therefore provide no support for plaintiffs' effort to hold Drislane personally liable as a defendant in this case.

Accordingly, I respectfully recommend that the claims against John Drislane be dismissed.

        *2.      Valid Collectively Bargained Agreement*

As the statutory language suggests, an employer's liability under ERISA is limited to those contributions it has obligated itself to make pursuant to a multi-employer plan or collective bargaining agreement. *See also Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539, 549 108 S. Ct. 830, 836 (1988) (recognizing that ERISA's "remedy is limited to the collection of 'promised contributions.'").

Plaintiffs claim that contributions are due and owing for the period from April 1, 2004 to December 31, 2005. As noted above, two collective bargaining agreements were in operation during this time, but they do not by their express terms cover the entire time period at issue. Rather, Oilean and Golden Vale executed CBAs in December, 2002 and October 2004, respectively, covering the period from July 1, 2002 to June 30, 2005. Pls. Letter Exs. 3, 4. It does not appear that plaintiffs entered into a CBA with Golden Vale, Oilean, or Drislane after the expiration of the Golden Vale CBA in June, 2005. Thus, no bargaining agreement expressly covers the period from July 1, 2005 through December 31, 2005, and only a bargaining agreement with Oilean – a corporation that is not a party in this case – was in effect prior to October 2004. Accordingly, liability must be separately considered with respect to each time period.

          a.      *Delinquent contributions from April through October 11, 2004*

The only relevant CBA in effect during this time period was with Oilean Construction. Pls. Letter Ex. 3. Plaintiffs, however, did not name Oilean as a defendant in this case; rather, they seek to hold defendant Golden Vale liable for the contributions due from Oilean, "as the successor to and/or alter ego of Oilean." Am. Compl. ¶ 6.

Although factual allegations in a complaint are deemed admitted upon default, legal conclusions are not. *See Greater New York Nursing Home v. Verrazano Staffing, Inc.*, 2007 WL 1480777, at *2 (E.D.N.Y. Mar. 28, 2007); *Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000); 10 MOORE'S FEDERAL PRACTICE § 55.12[1] (3d ed. 2007). An assertion that one corporation is "the successor and/or alter ego" of another is not one of fact, but a legal conclusion. *See, e.g., In re Mayo*, 2007 WL 2713064, at *3 (Bankr. D. Vt. Sept. 17, 2007)

(deeming factual allegations in plaintiff's complaint as true after defendant's answer was stricken, but refusing to admit as true the "legal conclusion" that two entities were alter egos). *See also N.L.R.B. v. Aluminum Tubular Corp.*, 299 F.2d 595, 599 (2d Cir. 1962) (noting that "[a] 'finding' that one company is the 'alter ego' of another is a conclusion of law"); *Puccio v. L.M.G. Air Corp.*, 1998 WL 887008, at *9 (E.D.N.Y. Dec. 8, 1998) (concluding, as a matter of law, that two corporations acted in an alter ego relationship).

Plaintiffs have alleged no facts whatsoever in support of their assertion that Golden Vale is Oilean's alter ego. For example, plaintiff has asserted no facts indicating "whether the two entities have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership, and whether the decision to change companies was motivated by anti-union sentiment." *A&P Brush Mfg. Corp. v. Nat'l Labor Relations Bd.*, 140 F.3d 216, 219 (2d Cir. 1998); *see also Roofers Local 195 Pension, Health & Accident, Annuity & Joint Apprenticeship Training Funds v. Shue Roofing, Inc.*, 2004 WL 395893, at *1 n.2 (N.D.N.Y. Feb. 3, 2004). Plaintiffs have similarly failed to allege any facts that might support a finding of successor liability, such as whether Golden Vale acquired substantial assets from Oilean and continued, without interruption or substantial change, Oilean's business operations, or whether Golden Vale continued to employ a majority of Oilean's workforce, utilized Oilean's machinery, plant and equipment, or did the same type of work as Oilean. *Bd. of Trs. of the Sheet, Metal Workers Local Union No. 137 Ins., Annuity & Apprenticeship Training Funds v. Silverstein*, 1995 WL 404873, at *3 (S.D.N.Y. July 6, 1995) (internal citations omitted). In fact, according to the online database of the New York Department of State, Division of Corporations, both Golden Vale and Oilean are active companies, and Golden Vale was actually incorporated

first, in 1986, whereas Oilean was incorporated in 1992. *See*

http://appsext8.dos.state.ny.us/corp_public/corpsearch.entity_search_entry (last visited Oct. 6, 2007). Thus, it is unclear how Golden Vale can be the successor to Oilean, which was subsequently incorporated and remains active.

Because the complaint fails to plead facts sufficient to support a finding that Golden Vale is either an alter ego or successor to Oilean, I respectfully recommend that plaintiffs' claims for contributions due owing for the period from April through October 11, 2004 be denied.

b. *Delinquent contributions from October 12, 2004 through June, 2005*

Plaintiffs allege that, on October 12, 2004, Golden Vale entered into the same CBA already in effect with respect to Oilean. Pls. Letter p. 2 n.1. Although plaintiffs have provided only the signature page of the CBA signed on behalf of Golden Vale, *id*. Ex. 4, they assert that the Golden Vale CBA is identical in all other respects to the Oilean CBA. *Id*. p. 2 n.1. Golden Vale's failure to remit the required contributions to the Funds from October 12, 2004 through June 30, 2005, the date the CBA expired, constitutes a violation of ERISA and establishes Golden Vale's liability to the Funds for the unpaid contributions that became due during that time.

c. *Delinquent contributions from July through December, 2005*

As noted above, the CBA with Golden Vale expressly covers only the period from July 1, 2002 through June 30, 2005. An employer may, however, continue to be bound by the terms of an expired CBA if the CBA contains an "evergreen clause." *See, e.g., Trs. of the Plumbers & Steamfitters Local 267 Pension, Annuity, & Ins. Funds v. Buchanan, Inc.*, 2006 WL 346421, at *1 n.6 and *3 (N.D.N.Y. Feb. 14, 2006) (holding defendant liable for contributions after the

expiration of the CBA based on an evergreen clause); *Bldg. Serv. 32B-J Pension Fund v. Vanderveer Estates Holding, LLC.*, 127 F. Supp. 2d 490, 494-95 (S.D.N.Y. 2001). The Golden Vale CBA contains an "evergreen clause" or renewal provision, which extends the CBA automatically from year to year unless either party notifies the other of a contrary intent. *See* Pls. Letter Ex. 3, p. 28 (Art. X § 1). It thus appears that the CBA between Local 1 and Golden Vale was automatically renewed on July 1, 2005 for a period of one year, and that Golden Vale was as a result required to make contributions to the Funds from July 1, 2005 through December 31, 2005. Golden Vale's failure to remit payments to the Funds during that time therefore constitutes a violation of ERISA.

### 3. *Unpaid Local 1 and LMRC dues and contributions*

Local 1 and LMRC also seek union dues and contributions defendants owe pursuant to the CBAs for the period April 1, 2004 through December 31, 2005. Am. Compl. ¶¶ 7, 13. Defendants' failure to pay dues is not alleged by plaintiffs to be a violation of ERISA, but rather a breach of the CBAs. The CBAs require employers to deduct certain dues and contributions on behalf of the union. *See* Pls. Letter Ex. 3, p. 5 (Art. III § 3). As plaintiffs have established that Golden Vale was bound by a valid CBA from October 12, 2004 through December 31, 2005, Golden Vale's liability to Local 1 and to LMRC for unpaid dues and contributions owing for this period has been established. As discussed above, however, plaintiffs have not established that Golden Vale is liable for Oilean's unpaid dues and contributions owing for the period April 1, 2004 through October 11, 2004.

### B. *Damages*

Although the allegations of a complaint pertaining to liability are deemed admitted upon

entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d at 158. Rather, claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id*. A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40. Plaintiffs have submitted accounting reports indicating deficiencies in contributions to the Funds. Pls. Letter Exs. 1, 2. Defendants have not submitted any opposition. Accordingly, a hearing on the issue of damages is not warranted.

The damages recoverable for a violation of Section 1145 are enumerated in Section 1132(g)(2), which provides as follows:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–
>
> > (A) the unpaid contributions,
> > (B) interest on the unpaid contributions,
> > (C) an amount equal to the greater of–
> > > (i) interest on the unpaid contributions, or
> > > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
> >
> > (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> > (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

*1. Unpaid Contributions*

Plaintiffs have submitted two reports from an independent accounting firm. The first report covers the period from April 1, 2004 through March 31, 2005, and the second from April 1, 2005 through December 31, 2005. Pls. Letter Exs. 1, 2. The reports were prepared by comparing employer payroll records and payroll tax filings with hours reported by defendants to the Funds. *Id.*

Although plaintiffs' complaint seeks $105,294.71 in unpaid contributions, Am. Compl. ¶ 9, the accounting reports calculate the amount owed from April 1, 2004 through December 31, 2005 as being $135,496.14. Pls. Letter Exs. 1, 2. Federal Rule of Civil Procedure 54(c) provides that "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Thus, plaintiffs may not recover an amount greater than that sought in their amended complaint. As discussed above, however, I recommend that plaintiffs' demand for contributions due under the Oilean CBA, which covers the period of April through October 11, 2004, be denied. The first accounting report, which encompasses contributions due from April 1, 2004 through March 31, 2005, calculates that plaintiffs are owed $94,433.64. Pls. Letter Ex. 1. After subtracting the contributions due for the period from April through October 11, 2004, which amounts to $44,322.79, the amount plaintiffs are owed for the period from October 12, 2004 through March 31, 2005 (the "first deficiency") is reduced to $50,110.85.[3] The second accounting report covers the period April 1, 2005 through December 31, 2005 and

---

[3] For October, 2004, plaintiffs allege a deficiency of $5,409.30. *See* Pls. Letter Ex. 1. One-third of October's contributions (for October 1st through 11th) amounts to $1,803.10. Adding the May through September deficiencies and one-third of October's totals $44,322.79. *Id*.

indicates contributions due in the amount of $41,062.50 (the "second deficiency"). *Id*. Ex. 2. The total amount due in unpaid contributions for October 12, 2004 through December, 2005 is, according to these reports, $91,173.35. This amount is less than the amount of contributions sought in plaintiffs' amended complaint, and I recommend that it be awarded.

    2.    *Interest*

The Funds also seek interest at the rate of 10% per annum on the unpaid contributions. Am. Compl. ¶ 11. Interest due for ERISA violations is calculated "using the rate provided for under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). The CBA provides for interest for corporations at either 10% or "at the maximum legal rate, whichever is greater." Pls. Letter Ex. 3 p. 9 (Art. III § 8). The corporate rate for underpayments during the delinquency period ranged from 4% to 7%. *See* Rev. Rul. 2007-16, *available at www.irs.gov/pub/irs-drop/rr-07-16.pdf* (last visited Aug. 23, 2007) *and* 2007 WL 731411. Accordingly, 10% is the greater rate, and I recommend that the Funds be awarded interest on the unpaid contributions at the rate of 10% per annum.

Plaintiffs suggest that interest should be calculated from the last date of each period in the accounting reports, which would be March 31, 2005 and December 31, 2005. Pls. Letter p. 2. These dates are reasonable. *See* N.Y. C.P.L.R. 5001(b) (permitting the accrual of pre-judgment interest from a "single reasonable intermediate date" when damages are incurred over a period of time). I therefore recommend that plaintiffs be awarded interest at the rate of 10% per annum on the first deficiency of $50,110.85 from March 31, 2005 through the date of judgment, to be calculated by the Clerk of the Court. Likewise, I recommend that plaintiffs be awarded interest at the rate of 10% per annum on the second deficiency of $41,062.50 from December 31, 2005

through the date of judgment, to be calculated by the Clerk of the Court.

   *3.   Liquidated Damages*

The Funds also seek liquidated damages. Section 1132(g)(2)(C) provides for liquidated damages in an amount equal to the greater of interest on unpaid contributions, or an amount provided for in the governing plan not to exceed 20% of the delinquent contributions. 26 U.S.C. § 1132(g)(2). The CBA here provides for liquidated damages equal to 20% of unpaid contributions. Pls. Letter Ex. 3 p. 9 (Art. III § 8). Under this provision, liquidated damages would equal 20% of the unpaid contributions of $91,173.35, or $18,234.67. Pls. Letter Ex. 3 p. 9 (Art. III § 8). As of August 30, 2007, plaintiffs are owed a total of $19,312.77 in interest.[4] Because the amount of interest owed is greater, I recommend that the Funds be awarded liquidated damages in an amount equal to the interest as calculated by the Clerk of the Court at the time final judgment is entered.

   *4.   Attorney's Fees and Costs*

Under ERISA, the Funds are entitled to recover their reasonable attorney's fees and costs. Upon a finding that a defendant has been delinquent in paying contributions, liability for attorney's fees under Section 1132(g)(2) is mandatory. *See Iron Workers Dist. Council of Western N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995).

All claims for attorney's fees in the Second Circuit must comply with *New York State*

---

[4]Interest on the first deficiency totals $12,126.83 ($50,110.85 x .10 x 2.42 (2 years and 5 months)). Interest on the second deficiency totals $7,185.94 ($41,062.50 x .10 x 1.75 (1 year and 8 months)).

*Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983), which requires that contemporaneous time records be submitted with all fee applications. *See also Plumbers Local No. 371 Joint Plumbing Indus. Bd. Pension Fund v. Frank Liquori Plumbing & Heating, Inc.*, 1996 WL 445065, at *5 (E.D.N.Y. June 26, 1996) (acknowledging that attorney's fees are mandatory under Section 1132(g)(2), but denying fees where plaintiff failed to comply with the requirements of *Carey*). Plaintiffs have submitted an attorney's affirmation and supporting contemporaneous time records. Wasserman Aff., Docket Entry 10. The Funds seek reimbursement for $1,475 in attorney's and paralegal's fees. *Id*. The hourly rates and time expended appear reasonable and should be approved, and I therefore recommend that the Funds be awarded the full $1,475 in fees they seek. Additionally, the Funds request $434 in costs. *Id*. Plaintiffs have failed to document their costs or explain what costs they incurred. The docket sheet, however, does reflect that plaintiffs paid a filing fee of $250. Docket Entry 1. I therefore recommend that plaintiffs be awarded $250 in costs, for a total of $1,725 in costs and fees.

    5.  *Union and LMRC Dues and Contributions*

  As noted above, plaintiffs allege that defendants owe dues and contributions as a matter of contract law. Plaintiffs are thus not entitled to any statutory damages under ERISA for defendants' failure to remit these funds. The Union and LMRC seek dues and contributions owed in the amount of $9,898.92 for April 1, 2004 through December 31, 2005. Docket Entry 10. Plaintiffs have not provided any documentation to support or explain this calculation, and do not even make reference to it in their submission in support of damages. Docket Entry 18. I therefore recommend that plaintiffs' application for dues and contributions be denied.

**Conclusion**

For the reasons stated above, I respectfully recommend that the Court dismiss the pending claims against defendant John Drislane and enter judgment only against defendant Golden Vale. I further recommend that, on their claims against Golden Vale, plaintiffs be awarded unpaid contributions in the amount of $91,173.35; that the Clerk of the Court calculate the interest on the unpaid contributions at the rate of 10% per annum on $50,110.85 of that amount from March 31, 2005 to the date final judgment is entered, and on $41,062.50 of that amount from December 31, 2005 to the date final judgment is entered. Finally, I recommend that the Funds be awarded liquidated damages in an amount equal to the interest calculated by the Clerk and attorney's fees and costs totaling $1,725. Finally, I recommend that plaintiffs' application for dues and contributions owed to the Union and LMRC be denied.

Any objections to this Report and Recommendation must be filed within ten days of the receipt of this Report and in any event no later than October 24, 2007. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989). Plaintiffs are hereby directed to serve copies of this Report and Recommendation upon defendants at their last known addresses, and to file proof of service with the Court.

/s/
**STEVEN M. GOLD**
**United States Magistrate Judge**

Brooklyn, New York
October 9, 2007

U:\CS 2007\bricklayers v golden vale final.wpd